**BURSOR & FISHER, P.A.**
Neal J. Deckant*
Brittany S. Scott*
Joshua R. Wilner*
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com
          bscott@bursor.com
          jwilner@bursor.com

*Attorneys for Plaintiff*

*Pro Hac Vice Forthcoming*

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MICHELLE SANKS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>AIRBNB INSURANCE AGENCY LLC and GENERALI ASSICURAZIONI GENERALI S.P.A.,<br><br>        Defendant. | Case No. _____<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michelle Sanks ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Airbnb Insurance Agency LLC ("Airbnb") and Generali Assicurazioni Generali S.P.A. (U.S. Branch) ("Generali") (collectively, "Defendants").  Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of a class of Washington consumers to seek redress for Defendants' unlawful marketing and sale of travel insurance policies on various booking, travel, and entertainment websites.

2.      Under Washington law, Defendants must file their premium plans with the insurance commissioner and cannot charge any rates or fees above their approved filings.  In addition, an insurance agent such as Airbnb is not permitted to collect a fee or compensation from consumers in connection with the insurance unless, prior to the sale: (a) it provides written disclosure of the compensation it receives from both the consumer and the insurer and (b) the consumer provides written consent to the fees and commissions at issue.

3.      In violation of these laws and against the clear public policy in Washington, Defendants automatically bundle a so-called "assistance fee" in the single price they charge consumers for travel insurance.  The motivation behind such conduct is clear: Defendants are trying to circumvent Washington law and charge more than the approved premium for their insurance services.

4.      Defendants make a straightforward offer to consumers: insurance for their travel arrangements, covering expenses associated with trip cancellation, trip interruption, lost baggage, and other travel perils.  Defendants make this offer directly to consumers through various websites, including, but not limited to, airbnb.com ("Airbnb").  Although their travel insurance offers are presented for a price that appears to be the insurance premium, Defendants secretly and unfairly charge unsuspecting consumers additional fees, *on top of the calculated premium*, without disclosing the nature of those fees and without giving consumers an option to pay only the

approved premium for the travel insurance according to the filed and approved rate for that insurance.  Defendants try to justify those fees by representing that the fees are for a supposed assistance service. That service purports to allow insureds to spend time on the telephone with customer service representatives and to receive "roadside assistance."  But consumers are unaware any such service is a noninsurance service, they do not want it, they do not want to pay what Defendants charge for it, and they have no choice but to pay for it in order to obtain travel insurance.

5.      Most, if not all, of the services and benefits Defendants call "non-insurance" or "assistance services" are, in fact, part of the insurance contract and are subject to the approved rate, and Defendants are not allowed to charge extra for them.

6.      Even if any of the assistance services and benefits Defendants call "non-insurance" could be accurately characterized as unrelated to insurance (if they were sold separately), it would still be illegal and unfair for Defendants to automatically bundle a fee for such "non-insurance" services into the total plan price and require everyone to pay that fee for the insurance to get the insurance that is offered.

7.      Consumers are not afforded any opportunity to decline these assistance services, or the associated charge in the offer or purchase process, nor is any information disclosed to consumers on assistance pricing distinguished from insurance pricing.

8.      Defendants' practices are contrary to Washington's public policy of ensuring consumers get actuarially based rates for insurance, and they deprive consumers of the benefits of that regulation.  If an insurer can just add any amount it chooses on top of an approved rate, it undermines the purpose of rate regulation and the efforts of the insurance commission in reviewing and approving specific rates.

9.      Moreover, the financial injury to consumers of being charged an additional fee, on top of the insurance premium, supposedly (but not in reality) for a service they do not use, are not aware of, and which is priced far above its actual value, outweighs any potential benefit of

requiring consumers to pay such an arbitrary fee—particularly when Defendants could easily make their assistance services optional.

10.     Plaintiff brings this action on behalf of herself and a class of similar situated individuals for legal and equitable remedies resulting from Defendants' illegal actions.

## PARTIES

11.     Defendant Airbnb Insurance Agency, LLC is a New York corporation with its principal place of business at 222 Broadway New York, New York 10038.  Airbnb sells the insurance policies offered by Defendants on Airbnb.com.  With respect to the allegations herein, Airbnb Travel Insurance acted as the agent of Generali and in engaging in the activities alleged, was acting within the scope of its authority as such agent.

12.     Defendant Generali Assicurazioni Generali S.P.A. (U.S. Branch) "is the U.S. Representative office of Assicurazioni Generali, S.p.A. whose head office is located in Trieste, Italy."[1]  The U.S. corporation is "domiciled in the state of New York," with its principal place of business at 250 Greenwich Street, 7 World Trade Center New York, NY 10007.[2]  Generali creates, maintains, offers, markets, and sells the insurance products at issue.

13.     Plaintiff Michelle Sanks is a natural person and citizen of Washington, residing in University Place, Washington.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

15.     This Court has personal jurisdiction over Defendants because Defendants sell the travel insurance policies at issue to residents of this District, Defendants conduct substantial

---

[1] Generali, "Generali U.S. Branch—Our Underwriter," available https://www.generalitravelinsurance.com/our-underwriter.html.

[2] LinkedIn, "Generali U.S. Branch," available https://www.linkedin.com/company/generali-usa-reasurance-company.

business in this District, the websites offering Defendants' travel insurance services allow Washington residents to place orders in Washington, and the conduct giving rise to this action arises out of and relates to that business.

16.     Defendants derive substantial revenue from insurance purchasers in the state of Washington.  Both Defendants are registered by the Washington Office of the Insurance Commissioner to sell travel insurance in Washington.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District, and Plaintiff resides in this District.

## **FACTUAL ALLEGATIONS**

18.     The sale of insurance is highly regulated in Washington.  Washington requires insurers and their agents to obtain approval for insurance rates prior to offering those policies and rates to consumers, and to clearly identify the approved insurance premium (inclusive of all fees and charges required for the procurement of the insurance to consumers.  *See* RCW 48.19.040, 48.18.180.

19.     There are also strict requirements if an insurance producer wishes to charge a fee for its services.  An insurance agent (or producer) such as Airbnb (or Generali) is not permitted to collect a fee or compensation from consumers unless (a) it provides written disclosure of the compensation it receives from both the consumer and the insurer and (b) the consumer provides written consent to the fees and commissions at issue.  *See* RCW 48.17.270.  Insurance producers cannot charge fees in connection with the procurement of insurance, above what they earn in regular commissions, without having advised the prospective insured, in writing, the amount they will be charged.  *See* WAC 284-30-750.  Accordingly, producers must identify any fees they charge separately from the premium and in sufficient detail for consumers to understand the fees and for there to be a determination that the fees are in compliance with the insurance laws and regulations.

20.     The Washington legislature has declared that it is unfair and against the public interest to violate Washington insurance laws and regulations, and provided that such violations are actionable under Washington's Consumer Protection Act.  *See* RCW 19.86.170, 48.01.030, 48.30.010; WAC 284-30-750.

21.     Reasonable consumers expect that insurers and their agents will comply with all laws and regulations, that insurance premiums will be clearly identified prior to purchase, and that any separate or additional fee, whether to compensate an agent or for a non-insurance service or benefit, will also be clearly identified prior to any agreement to pay for such fee.  Reasonable consumers who are quoted a single price for insurance reasonably assume that price is a lawful and approved premium and does not contain hidden fees added to the insurance premium.

22.     The products at issue are travel insurance policies offered by Generali on travel, booking, and entertainment websites (the "Products").  When purchasing rental reservations or similar travel accommodations from online websites or mobile apps, consumers are often presented with the option to insure their purchase.  Generali contracts with certain third-party retailers who offer online bookings and travel arrangements for their specific travel services (such as Airbnb) to present consumers with an offer to purchase Defendants' insurance Products when completing their bookings.  When Generali offers an insurance product in the checkout process of one of its partners or agents (such as Airbnb), Generali's insurance offer is the only insurance option presented to consumers.

23.     Airbnb acts as Generali's agent in the sale of the Products on some of the websites where the Products are offered, including, but not limited to, on airbnb.com.

24.     Defendants are responsible for charging and collecting the premiums and fees at issue and both responsible for ensuring that the amount charged to consumers is lawful.  Defendants purport to provide a supposed "assistance service" for which they deceptively, unfairly, and unlawfully charge consumers.  These additional non-insurance services are deceptive, unfair, and unlawful to the extent they offer no additional value to the consumer.  Defendants have been unjustly enriched by those unlawful, unfair, and undisclosed fees.

25.     The checkout flow on Airbnb.com is a typical example of an offer of the Products on a third-party website.  On the Airbnb.com checkout screen, the purchaser has the option to check a box to insure the reservation for an additional fee.





26.     Within this offer on a third-party checkout page, as with all pages where Generali offers the Products, Defendants do not identify assistance benefits, indicate that the assistance fee is for separate, non-insurance services, do not identify any fee, price, or charge for any such assistance service or benefit that is separate from the premium, and provide the consumer no means for purchasing the offered insurance policy without paying the assistance fee.

27.     If consumers are to click on the "what's covered" hyperlink (which they do not need to do in order to purchase the policy and check out), the services included in the policy are listed.



28.     None of the listed services are disclosed as noninsurance services and the amount charged for any noninsurance services is not listed.

29.     If consumers click the hyperlink for "Important Disclosures" (which, again, the consumer does not need to do to purchase the insurance and would likely not think to do on a page purporting to list all the insurance services already) that page discloses that the cost of Defendants' offered insurance services included a price for noninsurance assistance services, but does not disclose what those services are and how much Defendants are charging for them or give consumers the option not to purchase the additional assistance services.

30.     This document does not provide sufficient notice to consumers that they are being charged for supposed non-insurance services on top of the calculated premium for the insurance Product.  First viewing the "Important Disclosures" requires clicking through an already separate section not required for the checkout process.  Further, there is no indication within the actual offer or "What's Covered" pop-up that the price includes a fee for non-insurance services or that the "Important Disclosures" will reveal the existence of such a fee.  Moreover, the "Important Disclosures" still does not disclose the amount of the fee and requires consumers to send an email to ask Defendants to disclose the fee.  Defendants know that, and have designed the checkout process such that, consumers are highly unlikely to discover the existence of the amount of the assistance fee or make an inquiry about it.

31.     Consumers reasonably expect some amount of service and information (about the insurance and potential claims) to be available to them when they purchase insurance.  Such policy and claims administration costs are supposed to be included in the insurance premiums.  However, to the extent Defendants offer additional assistance benefits that are truly separate from the insurance benefits and may be accurately described as non-insurance benefits, there is little demand in the market for such assistance benefits at the prices Defendants charge and in the form in which they are offered (requiring insureds to call a toll-free number to speak with customer service representatives to obtain various types of information).  This is especially true of concierge services.  Consumers who purchase airfare and hotels online and through mobile applications can

readily find much of the information encompassed within Defendants' assistance services for free, and on demand, using the Internet and widely available applications (such as from Google, Apple, Yelp, and many other service providers), or from more local or personalized sources than Defendants can offer. Given that reality and given that Defendants make no mention of any separate charges for such services at the time they present their insurance offers to consumers, consumers have no reason to suspect they are being charged for Defendants' non-insurance assistance service at the time they insure their travel purchases.

32. In any event, most insureds are not aware of the availability of those services or that they have been charged for them. Consumers generally would not pay for the separate service if given a fair and informed choice whether to do so. On information and belief, the small percent of insureds who use the assistance services, and the relatively low costs Defendants incur in providing such services, do not come close to justifying the price of the services and the total revenues Defendants collect for the assistance services.

33. Moreover, there is no utility at all in requiring consumers to purchase Defendants' assistance service in conjunction with Defendants' insurance. Under Washington law, and under any balancing test of fairness, Defendants must provide consumers with a choice as to whether to pay for services in addition to the insurance. If insurers and their agents can bundle any fee they want with insurance premiums, without disclosing the fees to consumers and without giving them a fair and real choice whether to pay those fees, then the extensive, longstanding, and strict regulation of insurance premiums, commissions, and sales in Washington would become impotent.

34. If Defendants were genuinely attempting to market an informational assistance service, they would likely offer it for free (using advertisements to cover costs) or they would charge a flat, attractive fee and highlight some competitive edge over the alternative sources of information available to consumers. Instead, Defendants hide their assistance service fee from consumers at the point of purchase. Such practices imply that Defendants are using the assistance fees to subsidize marketing and operational costs that should properly be included in the insurance premiums, and thus that Defendants' characterization of the fees as non-insurance assistance fees is

disingenuous, and an attempt to circumvent Washington's regulation of premiums and of agent compensation.

35.    Regardless of how Defendants' "assistance" fees are ultimately characterized—whether as an artifice to collect an unlawful agent's fee (or unauthorized premium) or as genuinely for non-insurance services (that no one has chosen and that few people would pay for if given the choice)—the result is the same: Defendants collect more from consumers than they should. Defendants did not receive approval from the Washington Department of Insurance to charge these mandatory, hidden fees on top of the premium.  If Defendants followed the laws and regulations, they would not be charging such fees.  And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees.  Defendants are continuing to charge and collect sums that they are not allowed to collect by law, and which are more than consumers would pay if they understood Defendants' practices.

36.    In sum, Defendants' practice of charging consumers for supposed "assistance" in connection with trip/travel insurance is deceptive, unfair, and unlawful.

## PLAINTIFF'S EXPERIENCE

37.    On or around March 22, 2023, Plaintiff completed a booking on airbnb.com. During the checkout process, Plaintiff purchased the insurance Product offered by Defendants to protect her reservation by clicking the box to purchase travel insurance in the manner described above.

38.    Defendants designed, controlled, and have access to the exact offer text presented to Plaintiff.

39.    Defendants' insurance offer was the only insurance option presented to Plaintiff at that time.  There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance.  A single price was stated as the price of the "Travel Insurance."

40.    Unbeknownst to Plaintiff at the time she accepted the offers of insurance, the total amounts she was charged for the insurance included both an insurance premium and a mandatory

fee that Defendants contend was for assistance and other non-insurance services but that was, in effect, an unlawful agent's fee or unauthorized premium.  At a minimum, it was an unfair charge, and Defendants have no justification for bundling it with the premiums in the way they did.

41.     Neither the insurance offers nor any other portion of the checkout pages disclosed: (a) a specific breakdown of the components of the total price; (b) the specific amount Defendants categorize as the insurance premium; (c) that Plaintiff  was being charged particular amounts (on top of the insurance premium), supposedly for assistance and/or "non-insurance" services and benefits; (d) that the assistance charge was not determined solely by the cost of and demand for noninsurance assistance services, but that it was a pretext to increase Defendants' profits and subsidize the marketing and sale of travel insurance; (e) that the bundling of assistance services fees with insurance premiums had not been approved and/or was not in compliance with applicable laws and regulations; (f) that she was being charged an unlawful and unfair agent's fee; (g) that she was being charged an unlawful and unfair insurance premium; and/or (h) adequate material facts about the nature of such "assistance" services.

42.     When accepting Defendants' insurance offer, Plaintiff was not aware of any non-insurance fee in addition to the premium and was not aware of the foregoing facts at the time she purchased the insurance.  As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff agreed to pay Defendants to ensure her purchases and believed that the amount she paid Defendants was for the insurance only and that the amount charged was determined by a regulated, lawful process.  Plaintiff was seeking only lawful and proper insurance—not separate non-insurance informational services.  Plaintiff would not have paid the price charged for such services by Defendants if given the choice.  Plaintiff was not aware of and did not agree to pay for any additional or unlawful agent's fee or other service that Defendants purport to offer to their insureds.

43.     Plaintiff would have paid less than she did if Defendants had complied with Washington law and charged her only an approved premium, rather than unfairly, unlawfully, and deceptively including undisclosed additional fee or fees in the cost of the insurance.

44.     Plaintiff would have declined the fee or fees for Defendants' supposed "assistance" services if Defendants had fully and fairly disclosed: (a) that Defendants were charging an unlawful agent's fee and/or unlawful amount of premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic, material, and truthful information about the supposed "assistance" services, which would have allowed her to understand that she was being charged for something she did not want to pay for, and that the fee is a pretext for increasing Defendants' profits.  Plaintiff likely would not have purchased insurance from Defendants if she had doubts about their integrity and reliability, and she would have had such doubts if Defendants had fully and fairly disclosed the material information referenced in this Complaint.

## CLASS ALLEGATIONS

45.     Class Definition: Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and other similarly situated individuals defined as all Washington residents who purchased travel insurance from Generali during the Class period who were charged a fee for the supposed assistance services or benefits included with Generali's travel insurance contracts on top of the applicable insurance premium rate Generali was authorized to charge for their travel insurance (the "Class").

46.     Plaintiff also brings this action on behalf of a Subclass of consumers defined as all Washington residents who purchased travel insurance from Defendants during the Class period who were charged a fee for the supposed assistance services or benefits included with Defendants' travel insurance contracts on top of the applicable insurance premium rate Defendants were authorized to charge for their travel insurance (the "Airbnb Subclass").

47.     Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

48.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

49.     Excluded from the Class is Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

50.     <u>Numerosity/Ascertainability</u>.  Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable.  The exact number of Class Members is unknown to Plaintiff at this time; however, it is estimated that there are thousands of individuals in the Class.  The identity of such membership is readily ascertainable from Defendants' records.

51.     <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased travel insurance from Defendants and, as a result of Defendants' unlawful conduct, was charged more for that insurance than is allowed under Washington law.  Plaintiff's claims are based on the same legal theories as the claims of other Class Members.

52.     <u>Adequacy</u>.  Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members.  Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class.  Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the field of consumer protection litigation specifically.  Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

53.     <u>Common Questions of Law and Fact Predominate/Well Defined Community of Interest</u>.  Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendants have acted on grounds generally applicable to the Class.  Such generally applicable conduct is inherent in Defendant's wrongful conduct.  Questions of law and fact common to the Class includes:

(a) Whether Defendants had a common, automated practice of charging consumers mandatory assistance fees on top of insurance premiums for travel insurance and even ticket insurance, without an option to decline or avoid those fees;

(b) Whether Defendants had a common, automated practice of charging customers mandatory assistance fees on top of insurance premiums for travel insurance without disclosing the amount, nature, and bases of those fees;

(c) Whether Defendants' conduct is *per se* unlawful, unfair, or deceptive in violation of the Washington Consumer Protection Act;

(d) Whether Defendants' conduct is otherwise unlawful, unfair, or deceptive in violation of the Washington Consumer Protection Act;

(e) Whether Defendants' conduct violates their duty of good faith and fair dealing;

(f) Whether the fees Defendants' charged for their supposed assistance services constitute unlawful agent's fees in violation of RCW 48.17.270 and/or WAC 284-30-750;

(g) Whether the fees Defendants' charged for their supposed assistance services constitute unlawful premium in violation of RCW 48.19.040 and/or 48.18.180;

(h) Whether Defendants have engaged, and continue to engage, in unfair practices by circumventing regulatory scrutiny and charging unlawful and excessive agent fees and/or premium charges, and thus charging consumers more than they are legally allowed to charge;

(i) Whether Defendants have engaged, and continue to engage, in unfair or fraudulent practices by failing to disclose that the amounts charged to Plaintiff and class members included mandatory assistance fees and by misrepresenting in insurance offers that the prices charged were solely for the insurance premium;

(j) Whether Defendants knew or should have known that reasonable consumers did not value the assistance services offered by Airbnb;

(k) Whether Defendants knew or should have known that reasonable consumers interpreted Defendants' insurance offers as a single premium and were unaware of any additional fee for Airbnb;

(l) Whether Defendants knowingly engaged in the alleged conduct;

(m) The total amount of profits and revenues earned by Defendants and/or the total amount of monies or other obligations lost by class members as a result of the misconduct;

(n) Whether class members are entitled to payment of damages, plus interest thereon;

(o) Whether class members are entitled to payment of treble, exemplary and/or statutory damages plus interest thereon; and

(p) Whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief.

54.    Superiority: Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.  Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFF'S FIRST CAUSE OF ACTION
### (Violations of Washington's Consumer Protection Act ("CPA") (RCW 19.86.010 et seq.))

55.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

56.    For more than four years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and deceptive trade practices in Washington as outlined in this Complaint.

57.    Among other things, Defendants: (a) do not clearly distinguish assistance fees from the insurance premiums in their insurance offers; (b) do not identify, within their offers, the amount of the assistance fee and the nature of the assistance services offered; (c) do not provide

consumers the option to accept or decline the assistance fee; (d) do not provide consumers with full disclosure of Airbnb's compensation arrangements for the insurance transaction; (e) do not obtain written consent from insureds, after full disclosure of all relevant facts, to charge fees in excess of the premium and beyond what Airbnb is paid in regular commission from the sale of the insurance; (f) charge consumers total amounts for Defendants' insurance plans above what Defendants are legally entitled to charge (as Defendants did not get approval to sell insurance for the total prices they charge consumers); and (g) mislead consumers to believe that they are paying only a lawful insurance premium that has not been increased (at Defendants' discretion) with hidden add-on fees.

58.     The misconduct alleged herein has been declared a per se unfair practice by Washington statutes and regulations.

59.     The misconduct alleged herein is unfair because it is contrary to the public interest in reasonable, regulator-approved, transparent, affordable, and non-discriminatory insurance rates, free from hidden, excessive, or otherwise unfair charges or fees.

60.     Moreover, the misconduct alleged herein causes substantial injury to consumers (requiring the payment of millions of dollars in fees, each year, that consumers would refuse to pay if given the choice) that consumers cannot reasonably avoid, as they cannot decline the assistance fees Defendants charge and are generally unaware of the fees. This substantial cumulative harm to consumers is not outweighed by any countervailing benefits.  There is no benefit in forcing consumers to pay fees that they do not want to pay.  If Defendants' assistance service has any value and if there is any demand for it in the market, Defendants could easily provide consumers the option to accept or decline the assistance fee in the same manner (with a simple click) and the same location (the offer box presented on checkout screens) Defendants use for their insurance offers.  Defendants already have automated processes to immediately calculate an insurance premium and assistance fee in connection with each offer and sale; there is no utility in Defendants' refusal to simply state those prices separately and to provide consumers the option to decline the assistance fee.

61.     Defendants' acts and omissions have the capacity to and are likely to deceive a substantial portion of the general public.

62.     The misconduct alleged herein occurred, and continues to occur, in trade or commerce, as it concerns the sale of insurance and the imposition of fees in consumer transactions.

63.     The misconduct alleged herein affects the public interest because the vast majority of consumers who make travel purchases online are presented with Defendants offers during the checkout process.  Moreover, the Washington legislature has declared that the business of insurance affects the public interest.  See RCW 48.01.030.

64.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such unfair conduct in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  Defendants' unfair conduct caused Plaintiff and those similarly situated to pay money that they otherwise would not have paid.  Had Defendants dealt fairly and honestly with their insureds, including by clearly distinguishing the assistance fee from the premium in the insurance offer, identifying the amount of the assistance fee and the nature of the services, and providing consumers the option to accept or decline the assistance fee, Plaintiff and those similarly situated would have declined and/or avoided the fee for assistance services.

65.     Plaintiff and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices.  Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would not have paid the assistance or agent fees charged by Defendants.

66.     Defendants engaged in these unfair, deceptive, and unlawful practices to increase their own profits at the expense of their insureds.

67.     As a direct and proximate result of such actions, Plaintiff and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

Among other things, Plaintiff and the class members lost the amounts they paid for the supposed assistance services.

68.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

69.     Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful; an award of damages; and award of enhanced or treble damages; and the reasonable fees and costs incurred in connection with these claims.

70.     Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive, unfair, and/or unlawful trade practices complained of herein.  Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Washington, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled.  Plaintiff, those similarly situated, and the general public, have no other adequate remedy at law to ensure future compliance with the laws alleged to have been violated herein.

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (Breach of the Duty of Good Faith)

71.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

72.     The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.  Accordingly, Defendants had a broad duty to deal fairly and in good faith with their insureds, including Plaintiff.

73.     Defendants breached their duty to act fairly and in good faith by imposing fees on Plaintiff above what Defendants were legally authorized to charge in premium, without giving Plaintiff the option to decline the add-on fees and without giving Plaintiff sufficient information about the amount of the assistance fee and the nature of the services at issue.

74.     Instead, Defendants offered insurance for a single price and made misleading representations and omissions in their offer that led Plaintiff to believe that she was being charged a simple, lawful insurance premium, without hidden, unapproved fees being included.

75.     Defendants knew or should have known that consumers, including Plaintiff, would not pay Defendants' assistance fees if given the choice, and that consumers did not know Defendants were charging those assistance fees.

76.     Defendants knew or should have known that consumers, including Plaintiff, would not pay Defendants' assistance fees if given the choice, and that consumers did not know Defendants were charging those assistance fees.

77.     Defendants deliberate refusal to identify the charge for their assistance service also made it less likely that insureds would use the service for which they had been charged.

78.     In doing the things alleged above, Defendants considered only their own interests and profits, and they disregarded the interests of Plaintiff and their other insureds.  Defendants' conduct was unreasonable, frivolous, and/or unfounded.

79.     As a direct and proximate result of such actions, Plaintiff and the Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such unfair conduct in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  Defendants' bad faith conduct caused Plaintiff and those similarly situated to pay money that they otherwise would not have paid.  Had Defendants dealt fairly and honestly with their insureds, including by clearly distinguishing the assistance fee from the premium in the insurance offer, identifying the amount of the assistance fee and the nature of the services, and providing consumers the option to accept or decline the assistance fee, Plaintiff and those similarly situated would have declined and/or avoided the fee for assistance services.

## PRAYER FOR RELIEF

80.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

seek judgment against Defendants, as follows:

> (a)    For an order certifying the Class and Subclass under Fed. R. Civ. P. 23 and naming Plaintiff as the representative of the Class and Subclass, and Plaintiff's attorneys as Class counsel;
>
> (b)    For an order declaring that the Defendants' conduct violates the statutes referenced herein;
>
> (c)    For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;
>
> (d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;
>
> (e)    For prejudgment interest on all amounts awarded;
>
> (f)    For an order of restitution and all other forms of equitable monetary relief;
>
> (g)    For injunctive relief as pleaded or as the Court may deem proper;
>        For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 24, 2024                          Respectfully submitted,


                                              By:  /s/ Wright A. Noel
                                                   One of Plaintiffs' Attorneys

                                              **CARSON NOEL PLLC**
                                              Wright A. Noel (WSBA #25264)
                                              wright@carsonnoel.com
                                              20 Sixth Avenue NE
                                              Issaquah, WA 98027
                                              Tel: 425.837.4717
                                              Fax: 425.837.5396

                                              **BURSOR & FISHER, P.A.**
                                              Neal J. Deckant*
                                              Brittany S. Scott*
                                              Joshua R. Wilner*
                                              1990 North California Blvd., Suite 940
                                              Walnut Creek, CA  94596
                                              Telephone:  (925) 300-4455
                                              Facsimile:  (925) 407-2700
                                              Email: ndeckant@bursor.com

bscott@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

*\* Pro Hac Vice Application Forthcoming*